Good morning. May it please the Court, Gerald North for the appellant Kenneth S. Bailey. I'd like to reserve three minutes if I may. Sure. In the case that's now before the Court, an inventor, Mr. Bailey, sits here in this Court defrocked, stripped of all of his rights and interests as the inventor, and all of his rights and interests as founder of the company that was formed to exploit the invention. His conduct has been rather peculiar and adverse to his interests, I think. He was aware of hearings, didn't show up. With all due respect, Judge Fletcher, actually the opposite is true. Mr. Bailey, even pro se, did, pro per, did attend hearings. If you recall the very first hearing he attended, he attended to get a continuance to higher counsel. There were later, there was only one hearing that he did not attend, and that was the trial in the Mansfield case, which is almost a sideshow here because the judgment there was purely a continuation of an already granted preliminary injunction. It had no effect on his rights. Is this the occasion when he was in the cafeteria instead of coming to the courtroom? Correct. That's pretty strange, isn't it? Well, Judge Cooper seemed to think so, but not really. If you recall, his attorney at the time, Mr. Malick, told him he was going up to obtain a continuance. He left Mr. Bailey in the coffee shop and he went up to obtain a continuance. Why wouldn't he go with the lawyer to the courtroom? He was instructed not to. Maybe Mr. Malick thought that having him in the courtroom would induce Judge Cooper to say, well, let's go, the guy's here, let's go. He was told to stay in the courtroom. When Mr. Malick came down, he told Mr. Bailey, I'm going to rush to get to another courtroom, another courthouse. I took care of it. At that point, all Mr. Bailey knew was that the case had been continued, which of course it hadn't. A trial was going forward in the defendant's absence, and that was completely irrepressible. Rule 55b-2 would have required Judge Cooper at that point, once she allowed Mr. Malick to withdraw, to give him three days' notice to go get, minimum three days' notice to go get new counsel. That didn't occur. She immediately declared a default and went to a default prove-up trial. Okay, then in the virtual phone link case, there's a complaint filed and served and no answer filed. Well, I don't think Mr. Bailey, I think the record's clear, Mr. Bailey did not know there was no answer filed. Mr. Malick was hired to handle both of these cases. A default judgment was entered. A couple of months later, he learns about the default judgment. Right? No. He found out about the default judgment? He did, but the district court, there's a finding by the district court in the very order that's on appeal here that he discovered the judgment, the default judgment in VFI, which is the key judgment. Right. In November of 2002, and within three months, he sought relief. Well, what he did was he filed a lawsuit in Florida instead of setting aside the default judgment. Rule 60B allows it, an independent action to set aside the default judgment in another federal court. He was living in Florida. He filed a federal case in Florida to set aside the default judgment, perfectly permissible under Rule 60. And what happened with that case? That was ultimately dismissed for improper venue in June or July of 2003, and within six months of that event, these 60B motions were filed with Judge Cooper, as instructed by the Florida district court. And in that gap six-month period, Mr. Bailey was trying to find counsel. I don't think that it will come as much of a surprise that it was difficult for him to find a lawyer who would take a case of this kind on contingency when, to begin with, before you get to a case where you might win the contingency fee, you have to undo judgments that have stripped him of everything. The very claim he ever had. I think what's important to focus on is what Mr. Malik did. That is the key thing for this Court's decision in Taney. What did Mr. Malik do, and how did it affect Mr. Bailey's ability to proceed with a proper defense? Mr. Malik shows up on the day of trial in Mansfield and announces, based on a late-filed paper the night before, that he has a psychiatric excuse and is unable to proceed. Now, whether it's a ploy or a reality, and apparently there's some of both, the district court allows him to withdraw at the beginning of trial. Bailey is not in court, proceeds to declare a default and go to a default prove-up trial. When you say allowed him to withdraw, he didn't withdraw as counsel, isn't that right? He withdrew from the trial. Well, when you say withdraw, maybe we're using the term differently. He left the courtroom. He was still counsel of record. He was still counsel of record, having filed a paper saying he was unable to proceed for 90 to 120 days. In fact, he said he did not want to be relieved as counsel. He did say, I'm his attorney, he's not going to proceed per se. I'm not going to go down and tell him to come up here and try this case himself. That's what he said to Judge Woodward. So he just said adios and leave him. Said adios, told Mr. Bailey, gave him a quick story. I took care of it, which of course was a lie, and took off. And the district court's order itself finds that Bailey didn't know of this VFI judgment, which is, as I say, the judgment that led to all of these dramatic losses of all of these rights until November of 2002. He's already in Florida and he brings an action in Florida, which is permissible under Rule 60B. It's equally effective. The complaint, yes, was a layman's complaint, not very well styled, to say the least, and perhaps misdirected in certain of his allegations. But the core of the complaint, an attempt to set aside these judgments, is clear. Has he sought proceedings before the Bar Association in respect to Mr. Malik? No. Mr. Malik has had other bar proceedings, as I understand, brought against him by other people for similar misconduct. We had our hands full just dealing with this and the related bankruptcy case. We have not pursued Mr. Malik. I am highly confident Mr. Malik does not have a proverbial pot for us to go after in any kind of malpractice case, and I'm highly confident he has no insurance of any kind that would satisfy Mr. Bailey's claims against him. Did you check into that? We checked preliminarily when Sidley Austin was still in the case and then we dropped it. We all agreed that it was frivolous to pursue him. If I can come back, what's inexplicable here is why Judge Cooper reacted as she did to Mr. Bailey and Mr. Malik. Her order is based exclusively on a credibility determination. It basically says, I don't believe the declaration that Mr. Bailey has put in here. That declaration is, on all salient points, uncontroverted in the strictest sense of the word. Did Mr. Bailey file a declaration that said he hired Malik because he was full of tricks and surprises and things like that? Well, yeah, he said he was a cunning lawyer, yes. Well, isn't she entitled to take that into account? In whether he was complicit with some of these shenanigans going on? Well, except that the declaration makes it clear he wasn't aware of these particular shenanigans. And let me back up because there's been a lot of suggestion that the psychiatric defense or disability of Mr. Malik was a pure ploy. Apparently it was not. He was implicated in a triple homicide in the few weeks preceding that filing. He was questioned for two days by police in Costa Mesa and Newport Beach. So there was plainly a history. The psychiatrist's report was not questioned. He had a history of psychiatric problems and the psychiatric report. Even the respondents say, yeah, we understand that this is troubling to this guy under the circumstances. They don't question what the psychiatrist said, which is he needs to take time off and sort these things out. Whether Mr. Malik also had a ploy in mind was using it for tactical advantage. That's another question I can't get into as much. Did Malik show the judge a letter from the psychiatrist? Yes, it's in the record. What's the date of the letter from the psychiatrist? Was it a recent one? Within two days. I think it was June 19 and he submitted it on June 20. You know, given these kinds of dramatic facts that led to this problem with Malik, the idea that the sitting district court judge would proceed with a trial in absentia, a default prove up trial, which means Judge Cooper has now declared Bailey in default. He's not even in the courtroom. His lawyer is withdrawing at least from that proceeding at that time. Rule 55B2 at least required three days notice to Bailey to give him a chance to get new counsel. In BFI, the only notice that the respondents give is to Mr. Malik, who by now is who knows where. Bailey knows nothing about the default judgment. Again, 55B2 comes into play. We have the same problem. Stepping back from the situation, we are really looking at a proceeding that is so unusual and so unprecedented. Our legal system doesn't sanction trials in absentia and default judgments entered without notice, and yet that's what happened in this scenario two times. I'd like to reserve what time I have left. Thank you very much, sir. Good morning, Your Honor. May it please the court. I'm Tom Weiss, and I'm representing the virtual phone link and the individuals who are the appellees. Yes, and the appellees. A couple of things that were just said I think bear emphasis and elaboration. As Judge Silverman just mentioned, the fact is that Mr. Malik was not relieved his counsel for Mr. Bailey. In fact, he specifically said that he was not withdrawing. And I think the heart of this dispute here, so far as it concerns the appeals, is that the district court was confronted with a very elaborate, continuing attempt to manipulate the process of the court and to manipulate the district court. As far as the excuse is concerned of psychiatric disability, the record shows that just a week earlier, before he filed his last-minute request for continuance of the trial based on the purported disability, he had filed another document attempting to derail the trial, accusing the district court of bias and thereby kind of getting an automatic continuance because the matter had to be referred to Judge Snyder to determine the merits of the recusal accusation. Judge Snyder determined that in the negative. It was reset for trial. And as the court pointed out, the district court pointed out in denying the continuance of the trial at that time, the alleged events concerning the police investigation had occurred prior to that attempt to get Judge Cooper recused. So it's clear that that was really just an attempt to game the system. As far as the merits of the claim itself were concerned, the record contains the supplementary excerpts of record as the opposition that was filed to that request based on psychiatric disability. It's a supplementary excerpts of record 622 and 623. The fact was that the doctor involved had not seen the patient since 1998 or 1999. And so that was very clearly manipulative. The question that was most important for the district court was Bailey's complicity in what his attorney was doing. And as is argued in the brief and the record supports it, when he submitted his first declaration in response to in support of his motions, Mr. Bailey didn't say that he was in the building, that he was in the Roybal coffee shop, that he spoke with the witness, Mr. Stashiewicz. And it was only when the opposition pointed out that Mr. Stashiewicz had, in fact, met Mr. Bailey, that Mr. Bailey tried to explain it away in the reply. The declaration of Mr. Stashiewicz said that he met with Mr. Bailey, talked about the trial, that Stashiewicz would testify that he had been essentially swindled out of $30,000 to support Bailey's enterprise when he thought he was investing in the company itself, and that he tried to make peace with Stashiewicz by saying, well, I'll give you the money back. Don't trust these fellows because they're bad people. So none of this was revealed to the court in the motion. It only came out in the response. So I think that the evidence that the court had before it about Bailey's complicity and what he was up to was not only substantial but abundant. And, again, this court here, I think there is no dispute about the standard of review being essentially one of substantial evidence or abuse of discretion. And the circumstances here are so strongly indicative of the complicity that I think that the court was very well justified in denying the motions. Now, there are other items in the record that are referred to in the brief that further support the lack of merit, even apart from the issue of credibility. The untimeliness. Counsel just made a reference to the independent action in Tampa and said that it was dismissed for lack of venue. But, in fact, if you look at the order of Judge Moody, which is at excerpts of record 363 to 365, it was actually dismissed for lack of diversity jurisdiction. The court noted that normally he would give a party an opportunity to amend the complaint to try to plead something within jurisdiction, but he said the circumstances here were such that even if he did plead a proper complaint, which he hadn't, that he'd probably send it back to Tampa, I mean from Tampa to Florida. Obviously, it didn't escape the notice of the district judge there that Mr. Bailey had come to Florida to sue a sitting district court judge in California on a transaction that was extensively linked to California. So, again, this just demonstrates the correctness of the district court's conclusion that Mr. Bailey's attempt throughout has been to avoid a trial on the merits by the means that he took. He was not well served by Mr. Malik. There's no dispute about that, but that was his counsel. That was his choice. The district court found that Mr. Bailey was aversed to cross-examination at the time of the trial, June 21, 2002, because he knew that Stasiewicz was there, and he knew that all of the things that had been forbidden by the district court's preliminary injunction, which, recall, was entered as a temporary restraining order in February and confirmed as a preliminary injunction in April. Well, the evidence was going to show that Mr. Bailey had grossly violated the terms of that preliminary injunction. So that was another factor which the court was quite properly aware of and quite properly took into account. So as far as Bailey's what he knew and when he knew it, again, there was evidence in the record, and we've cited it in the briefs, that Mr. Bailey was always difficult to serve and that he was evasive not only because of the problem that he had with VFI, but he had other potential creditors, too. There was reference in the record to Mr. Malik substituting in to another piece of litigation in Orange County about the same time, and this is approximately March of 2002, where he was being sued by another creditor who had a major claim against him. So the declarations before the court detailed the difficulties in getting a hold of him in Orange County, and again, as we pointed out in the brief, the moving or temporary underground, whatever he did in going to Canada, he did that without telling anybody, without telling his creditors and without telling VFI, without telling his corporate opponents where he was and how to contact him, and the inference is that that was deliberate. He had a counterclaim in the case, asserting all of the things that he now says in his declaration, and the court pointed out, hey, that was his counterclaim, those were his claims, it was up to him to try them. He can't both make his claim and refuse to try it. That's the essence of it. Thank you very much, Mr. Weiss. Mr. North, you get a minute in rebuttal. The only thing offered by the respondents as evidence of complicity is the fact that Mr. Bailey was in the coffee shop downstairs and ran into this fellow, Stackiewicz, but Stackiewicz was not a witness who was listed for trial, so he wasn't going to testify about anything, and that's clear from the record. Secondly, if Bailey had been concerned about it, how would he have communicated it to Malick? Malick was in court, he was in a coffee shop on the ground floor. Absent telepathy, Malick could not communicate with Bailey nor Bailey with Malick. Malick was doing whatever he was going to do, irrespective of anything Bailey knew, and Bailey did what he did, irrespective of anything Malick knew. Is Malick still practicing law? Your Honor, I don't know. I've seen, as of a year ago, other clients raising similar complaints against him. Was any effort made to sue him for malpractice? No, I think I addressed that earlier, Your Honor. We determined that was frivolous. It was pointless. Thirdly, the entire effort is to support a drawing of a credibility finding on a barren paper record. He's gaming, the respondents are trying to game a declaration and justify a determination that was based on not believing that declaration. But declarations can't be observed and don't have demeanor. This judge never saw Mr. Bailey on the witness stand, ever, in either case. Credibility determination was impermissible, constitutional impermissible, I might add. Thank you very much, Mr. Dirk, your time is up. Mr. Weiss, thank you. The case has started as submitted.
judges: Bright, B. Fletcher, Silverman